State of Wisconsin, Plaintiff-Respondent,

v.

James A. Schmidt, Defendant-Appellant.

Court of Appeals

*No. 04–0904–CR. Submitted on briefs September 7, 2004.—
Decided November 11, 2004.*

2004 WI App 235

(Also reported in 691 N.W.2d 379.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel S. Diehn* of *Daniel S. Diehn, S.C.*, Black River Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Shannon Wittenberger*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J.   James Schmidt appeals the judgment of conviction for operating a motor vehicle while intoxicated (OWI), fifth offense, in violation of Wis. Stat. §§ 346.63(1)(a) and 346.65(g).[1] He challenges the circuit court's order denying his motion to suppress the results of a blood test for alcohol, contending he was entitled to suppression because he was not given a breathalyzer test after the blood test as required by Wis. Stat. § 343.305(5)(a).

¶ 2.   We agree with Schmidt that an accused's request for an additional chemical test under Wis. Stat. § 343.305(5)(a) is not invalid solely because that request was made before and not after submitting to the test the law enforcement officer asked the accused to take. However, we nonetheless conclude that the circuit court properly denied Schmidt's motion because, based on the facts as found by the circuit court, Schmidt did not request an additional test.[2] Accordingly, we affirm.

## BACKGROUND

¶ 3.   On April 10, 2003, Schmidt was involved in a one-vehicle accident and walked from the scene to his parents' house. Jackson County Deputy Sheriff Michael Tauscher arrested Schmidt there for operating a motor vehicle while intoxicated, after observing that Schmidt had slurred speech and smelled of intoxicants. Deputy

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Because of this conclusion, we do not address the State's argument that, even if Schmidt had made a proper request for an additional test, the officer's failure to administer an additional test does not entitle Schmidt to the remedy of suppression of the blood test results.

Tauscher told Schmidt they were going to the hospital to have a blood draw performed. Schmidt said he wanted a breathalyzer test rather than a blood test. Deputy Tauscher replied that the first test he was offering was a blood test and Schmidt would have to take that first; if Schmidt took the blood test, he could then take a breathalyzer test. Schmidt stated several times thereafter that he would rather take the breathalyzer test than the blood test. He explained that he did not want a blood test because when he had one before, the results were much higher than the results of the other test. After this discussion, Deputy Tauscher read Schmidt an "Informing the Accused" form, which informed Schmidt of the penalties for refusing to take the test the officer requested. The form also informed Schmidt that he could take an alternative test provided by the law enforcement agency free of charge if he took the requested test.

¶ 4. After Deputy Tauscher read this form, Schmidt cooperated with having his blood drawn. Deputy Tauscher then transported Schmidt to the jail. No breathalyzer test was administered. Deputy Tauscher testified that, after Schmidt's blood was drawn, Schmidt did not ask to have a breathalyzer test. Schmidt's testimony was in conflict with the officer's on this point. Schmidt testified that, after the blood draw, he told Deputy Tauscher he still wanted a breathalyzer test and it was his understanding that he was going to be given one.

¶ 5. The trial court found that Schmidt stated that he would rather have a breathalyzer test than a blood test several times, but that after the blood test was administered, Schmidt did not request another test. The court explained that it found Deputy Tauscher's testimony on this disputed point more cred-

ible than Schmidt's. The court construed WIS. STAT. § 343.305(5)(a) to require that a person must first submit to the test requested by the officer before making a request for an additional test, and, the court stated, the Informing the Accused form also contemplates this. Because the court found Schmidt did not make a request for the breathalyzer test after taking the blood test, it denied Schmidt's motion to suppress the results of the blood test.

## DISCUSSION

¶ 6.   On appeal, Schmidt contends that WIS. STAT. § 343.305(5)(a) requires suppression of the blood test results because he asked for a breathalyzer test as an additional test and Deputy Tauscher failed to administer one after he took the blood test. Schmidt disputes the circuit court's construction of the statute to require that the request for an additional test be made after the first test has been taken. Instead, Schmidt asserts, when a person asks for a different test before taking the test requested by the officer, after the person takes the test requested by the officer, the officer must inquire whether the person still wants another test.

¶ 7.   The State responds that the circuit court correctly construed the statute. In the alternative, the State contends, even if the statute does not require that the additional test be requested after the first test has been taken, the record shows that Schmidt requested the breathalyzer test instead of the blood test, not in addition to it, and this is not a valid request under WIS. STAT. § 343.305(5)(a).

¶ 8.   WISCONSIN STAT. § 343.305(2) provides that a person operating a motor vehicle on the public highways is deemed to have given consent to one or more tests of his or her breath, blood, or urine for the purpose

567

of determining the presence of alcohol or controlled substances, when requested by a law enforcement officer and consistent with certain statutory prerequisites.[3] The law enforcement agency must be prepared to administer at least two of the three approved tests and may designate which of the tests shall be administered first. Section 343.305(2). *See also State v. Vincent*, 171 Wis. 2d 124, 128, 490 N.W.2d 761 (Ct. App. 1992). The test designated by the law enforcement agency as the first to be administered is sometimes referred to as the "primary test." *State v. Stary*, 187 Wis. 2d 266, 269, 522 N.W.2d 32 (Ct. App. 1994).

¶ 9.    WISCONSIN STAT. § 343.305(5)(a) addresses the additional test the agency must be prepared to administer:

> ADMINISTERING THE TEST; ADDITIONAL TESTS. (a) If the person submits to a test under this section, the officer shall direct the administering of the test. A blood test is subject to par. (b). The person who submits to the test is permitted, upon his or her request, the alternative test provided by the agency under sub. (2) or, at his or her own expense, reasonable opportunity to have any qualified person of his or her own choosing administer a chemical test for the purpose specified under sub. (2) . . . . The agency shall comply with a request made in accordance with this paragraph.

¶ 10.    At the time the officer asks an accused to submit to a chemical test, the officer must read to the accused a form prescribed by statute. WIS. STAT. § 343.305(4). This form is generally referred to as the "Informing the Accused" form. The form must explain, among other things, that the officer wants to take

---

[3] The refusal to submit to a test is, in itself, grounds for penalties under WIS. STAT. § 343.305(9), including revocation of the person's operating privilege.

samples of the accused's breath, blood, or urine to determine the concentration of alcohol or drugs in the accused's system. The form must also state: "If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense." Section 343.305(4). The Informing the Accused form Deputy Tauscher read to Schmidt contained this language.

¶ 11. Although WIS. STAT. § 343.305(4) and (5) use the term "alternative test," it is clear from these provisions that the accused does not have a right to choose a test *instead of* the one the officer asks him or her to take; rather, the "alternative test" is *in addition to* that test. It is for this reason that the case law sometimes refers to the "alternative test" as the "second" or "additional" test. *See, e.g., State v. Piddington*, 2001 WI 24, ¶ 51, 241 Wis. 2d 754, 623 N.W.2d 528 ("second, alternative test"); *State v. Renard*, 123 Wis. 2d 458, 460, 367 N.W.2d 237 (Ct. App. 1985) ("additional test"). We will use the term "additional test" in this opinion.

¶ 12. The purpose of the additional test is to afford the accused the opportunity to verify or challenge the results of the first or primary test. *See State v. McCrossen*, 129 Wis. 2d 277, 288, 297, 385 N.W.2d 161 (1986). If the accused makes a valid request for an additional test, the officer must exercise reasonable diligence in providing it. *Renard*, 123 Wis. 2d at 460–61.

¶ 13. Whether Schmidt made a request for an additional test as required by WIS. STAT. § 343.305(5)(a)

requires us to construe and apply that provision to the facts of this case. We accept the findings of fact made by the circuit court unless they are clearly erroneous, WIS. STAT. § 805.17(2); and we accept the credibility determinations made by the circuit court sitting as the trier of fact. *Rivera v. Eisenberg*, 95 Wis. 2d 384, 388, 290 N.W.2d 539 (1980). However, construction of the statute and its application to the facts as found by the circuit court present a question of law, which we review de novo. *State v. Stary*, 187 Wis. 2d 266, 269, 522 N.W.2d 32 (Ct. App. 1994).

¶ 14.  The circuit court here made two critical findings of fact:  (1) when Deputy Tauscher requested that Schmidt provide a blood sample for a test, Schmidt said he "would rather take a breath test"; and (2) while Schmidt said this more than once, after he took the blood test he did not request another test. We accept these findings because they are supported by the record and involve credibility determinations that are properly the role of the circuit court.

¶ 15.  When we construe a statute, we begin with the language of the statute and give it the common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely-related statutes; and we avoid constructions that produce unreasonable or absurd results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employ-

ing these principles, statutory language is ambiguous—that is, reasonably gives rise to different meanings—then we may consult extrinsic sources of interpretation, such as legislative history. *Id.*, ¶ 46.

¶ 16. We consider first whether Wis. Stat. § 343.305(5)(a) requires that a request for an additional test must be made after the first test has been taken. The State relies on the language, "The person *who submits to the test* is permitted, upon his or her request, the alternative test provided by the agency . . . ." This language, the State asserts, means the person is permitted to make a request only after submitting to a test. Schmidt, in contrast, asserts that this language does not impose a timing requirement on the *request* for an additional test, but rather on the *taking* of the additional test: a person may not take the additional test until he or she takes the first test. Both parties find support for their positions in *Renard*, 123 Wis. 2d 458, and *Piddington*, 241 Wis. 2d 754, but we conclude neither case resolves the issue.

¶ 17. In *Renard*, as in this case, the officer requested that the accused submit to a blood test, the accused requested that a breathalyzer test be performed instead, but he did submit to a blood test, and no breathalyzer test was performed. *Renard*, 123 Wis. 2d at 460. Also as in this case, there was a dispute between Renard and the officer regarding Renard's requests. We characterized that dispute as: "Renard and his wife claim he continued to request the breathalyzer test after he consented to the blood test [and] [t]he officer denied this contention." *Id.* However, unlike the circuit court in this case, the circuit court found that Renard requested a breathalyzer test "in addition to the blood test." *Id.* We concluded this finding was supported by the record and, because the officer failed

to provide the additional test, we concluded that suppression of the blood test result was an appropriate sanction. *Id.* at 461.

¶ 18. Because it was unnecessary to do so in *Renard*, we did not discuss whether Renard's testimony was that he requested a breathalyzer test after agreeing to take the blood test but before taking the blood test, or whether his testimony was that he requested a breathalyzer test after he took the blood test. Schmidt argues the former interpretation of Renard's testimony; the State argues the latter. However, we simply did not address this factual distinction, and, thus, the decision does not resolve the question whether the statute requires that the request for the additional test be made after taking the first test.

¶ 19. The supreme court in *Piddington* has since described *Renard* as involving a request for an additional test after taking the first one. *Piddington*, 241 Wis. 2d 754, ¶ 51. There the accused, who was deaf, wrote a note to the officer asking for a blood test, and he was given a blood test. *Id.*, ¶¶ 2, 5–6. One of the grounds on which Piddington sought to suppress the results of the blood test was that he requested an additional test but did not receive it. *Id.*, ¶ 50. The supreme court rejected this argument because, it stated, the circuit court made no factual finding that Piddington had requested a "second, alternative" test. *Id.*, ¶ 51. The supreme court distinguished *Renard*, on which Piddington relied, saying that there "the circuit court found that the accused driver had repeatedly requested an additional chemical test that was not given," *id.*, ¶ 50, and "[u]nlike in *Renard*, . . . Piddington did not request a second alternative test *after* he submitted to the initial test." *Id.*, ¶ 51 (emphasis added).

572

¶ 20.  Although the *Piddington* court's reference to *Renard* supports the State's reading of the facts in *Renard*, it does not support the State's position that a request for an additional test *must* be made after taking the first test in order to be valid. Because there was no finding Piddington ever made any request for a test in addition to the blood test that was administered, there was no need for the court in *Piddington* to address when such a request must be made in order to be valid. In describing the accused in *Renard* as requesting an additional test "after" submitting to the initial test, the *Piddington* court is simply describing its view of the facts in *Renard*. It is not holding, as the State asserts, that a request for an additional test is not valid unless made after the first test has been administered.[4]

¶ 21.  Another case that refers to the timing of the request for an additional test is *Village of Oregon v. Bryant*, 188 Wis. 2d 680, 524 N.W.2d 635 (1994). In the context of rejecting the argument that the Informing the Accused form there did not adequately inform the

---

[4] In addition to distinguishing *State v. Renard*, 123 Wis. 2d 458, 460–61, 367 N.W.2d 237 (Ct. App. 1985), the court in *State v. Piddington*, 2001 WI 24, 241 Wis. 2d 754, 623 N.W.2d 528, distinguished *McCrossen*, 129 Wis. 2d 277, 281–82, 385 N.W.2d 161 (1986), in which the accused requested an additional test after seeing the results of the test the officer asked her to take. *Piddington*, 241 Wis. 2d 754, ¶¶ 50–51. (The court in *McCrossen* held that the failure to provide an additional test in response to the accused's request did not violate due process and thereby require dismissal of the complaint; it also held that the circuit court properly excluded reference to the request for an additional test because it excluded evidence of the results of the test performed. 129 Wis. 2d at 280.) As in its reference to *Renard*, the *Piddington* court was describing the facts in *McCrossen*, not deciding that a request for an additional test is not valid unless made after the first test has been administered.

accused of the potential value of an additional test because the form was not given to the accused until after the first test showed a prohibited blood alcohol concentration, the court stated:

> It is clear from the "Informing" document read to the accused that the alternative test may be asked for only after compliance with the test requested by the officer under the Implied Consent Law. It is after the accused has been told and knows that he has tested in excess of a permitted BAC that he has the opportunity to have another test. Thus, at this post-initial testing juncture, the accused has been fully informed and knows that he will be administratively suspended because he has failed the first test. There is no additional jeopardy threatened by asking for another test. The accused has absolutely nothing to lose.

188 Wis. 2d at 691.

¶ 22. The Informing the Accused form the court was considering in *Bryant* stated:

> In addition to the test or tests to which you have submitted at the request of a law enforcement officer, after submitting to these tests, you may request the alternative test the law enforcement agency is prepared to administer or you may request a reasonable opportunity to have any qualified person of your choice administer a chemical test at your expense for the purpose specified under s. 343.305(2) Wis. Stats.

*Id.* at 684. There was no dispute that "the form complie[d] with the statutory mandate of sec. 343.305(4), Stats." *Id.* At that time, the version of WIS. STAT. § 343.305(4) in effect required that the accused be orally informed, among other things, that "[a]fter submitting to testing, the person tested has the right to

have an additional test made by a person of his or her own choosing." Section 343.305(4)(d) (1991–92).[5]

¶ 23.    We do not view the *Bryant* court's statement quoted in paragraph 21 as a holding that a request for an additional test is invalid unless made after the first test has been performed. First, the court was considering a differently worded Informing the Accused form, which was based on different statutory language. Second, the court was deciding a different issue:   whether the accused was adequately informed of the potential benefits of having a second test.

¶ 24.    Because the case law does not resolve the issue of the timing of a valid request for an additional test, we return to the language of Wis. Stat. § 343.305(5)(a). We conclude it is ambiguous on this point. The second sentence does not expressly state that a request for a second test must be made after the first test has been completed. However, the language "the person who submits to the test is permitted, upon his or her request, the alternative test" can be reasonably read to mean that the person making the request must already have submitted to the first test. On the other hand, that same language can be reasonably read to mean that the person making the request will not be permitted to take an additional test until he or she has submitted to the first one, with no timing requirement for the request for the additional test.

¶ 25.    We conclude that the language of Wis. Stat. § 343.305(4) does not resolve the ambiguity in § 343.305(5)(a) but instead contains a similar ambiguity. The statement "[i]f you take all the requested tests, you may choose to take further tests" may mean either

----

[5] The present version of Wis. Stat. § 343.305(4) was enacted by 1997 Wis. Act 107, § 1.

that taking the requested tests is either a condition for stating a choice for further tests or is a condition for taking further tests. Section 343.305(4). The Informing the Accused form Schmidt was read does not resolve this ambiguity because it is required to, and does, exactly track the language of § 343.305(4).

¶ 26.   Although Schmidt and the State each propose a reasonable construction of Wis. Stat. § 343.305(5)(a), we conclude that Schmidt's is more reasonable because it is more consistent with the purpose of affording the accused an additional test and does not thwart other relevant purposes of the implied consent law.

¶ 27.   The purpose of the statutorily imposed implied consent to chemical tests is to facilitate the gathering of evidence against drunk drivers. *State v. Zielke*, 137 Wis. 2d 39, 46, 403 N.W.2d 427 (1987). Allowing law enforcement agencies to choose which of the three types of chemical tests to request an accused take first, and imposing sanctions for a refusal to take the test selected by the agency or officer, as the legislature has done, serves that purpose. The purpose of permitting an accused to take additional tests, as the legislature has also chosen to do, is, as we have already stated, to afford the accused the opportunity to verify or challenge the results of the first test. *McCrossen*, 129 Wis. 2d at 288. Thus, the requirement that the accused submit to the test requested by the officer before being entitled to any additional test both allows the agency control of the decision of which test to administer first and affords the accused the opportunity to verify or challenge the results of the first agency test. The legislature has also chosen to lessen the burden of

additional tests on law enforcement agencies by requiring an agency to provide at its expense only the test it has chosen to make available as a second test; if the accused wishes either a third test or a second test that is not made available by the agency, the accused must pay for that and make those arrangements. WIS. STAT. § 343.305(5)(a).

¶ 28. A requirement that a request for an additional test must in all cases be made after taking the first test, even if an additional test was requested before the accused took the first test, serves neither the purpose of facilitating the gathering of evidence for the law enforcement agency nor the purpose of making an additional test available to verify or challenge the results of the first test. A request made after the first test is taken, rather than before, does not lighten the burden on the agency of providing the additional test it is required by law to make available; and it has the potential of diminishing the opportunity the legislature has chosen to make available to the accused to verify or challenge the results of the first test.

¶ 29. We also observe that WIS. STAT. § 343.305(4) requires the officer to read the Informing the Accused form "at the time the chemical specimen is requested," which means that the accused is told about the option of a second test before he or she takes the first test.[6] Thus, it is logical that reading the form may prompt an accused to request an additional test before taking the one requested.

¶ 30. In concluding that it is more reasonable to construe WIS. STAT. § 343.305(5)(a) as not imposing a

_____

[6] Indeed, the form read to Schmidt required that he sign his agreement to take the blood test before it was administered, which he did.

requirement that the request for an additional test be made after the first test is completed, we do not suggest that the timing of the request is irrelevant. An accused who requests an additional test before submitting to the first test and still wants an additional test after the first test is completed will likely repeat the request after the first test to make sure an additional test is administered. Certainly the absence of a request made after the first test is relevant to deciding as a factual matter whether the accused requested an additional test. However, there may be situations where an accused clearly requests an additional test before taking the first test, takes the first test, and then is prevented by circumstances, such as the absence of law enforcement personnel, from repeating to an officer the request for an additional test. The State's proposed construction of the statute would eliminate the right to an additional test in this situation—a result that would be inconsistent with the legislature's purpose in establishing the opportunity for an additional test and would not further the purpose of facilitating the gathering of evidence by law enforcement.

■■■

¶ 31.   Although we agree with Schmidt that WIS. STAT. § 343.305(5)(a) does not impose a timing requirement on the request for an additional test, we do not agree that he was therefore entitled to an additional test. The circuit court found that Schmidt repeatedly requested a breathalyzer test "rather" than a blood test:   indeed, this was the wording of Schmidt's testimony as well as the officer's. The circuit court also found Schmidt did not request a breathalyzer test after he took the blood test. Based on these factual findings, we conclude as a matter of law that Schmidt did not request a test in addition to the blood test. The repeated

requests Schmidt made before taking the blood test were for a breathalyzer test instead of the blood test, not in addition to the blood test; and, based on the circuit court's findings, Schmidt made no later request.

¶ 32. Because Schmidt did not request a test in addition to the blood test, the officer did not violate WIS. STAT. § 343.305(5)(a) by not giving him a breathalyzer test after the blood test. Therefore, although we have arrived at a different construction of the statute than did the circuit court, we affirm the circuit court's denial of Schmidt's motion to suppress the results of the blood test.

*By the Court.*—Judgment affirmed.