COURT OF APPEALS
DECISION
DATED AND FILED

January 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP146-CR**

Cir. Ct. No.  **2016CT183**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

 V.

ANTHONY J. MADLAND,

 DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

¶1     SEIDL, J.[1]  Anthony Madland appeals a judgment of conviction, entered upon his no-contest plea, to third-offense operating a motor vehicle with a prohibited alcohol concentration (PAC).  He asserts the circuit court erred by denying his motion to suppress evidence of the result of a chemical blood test that

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

he submitted to after his arrest for suspected operating a motor vehicle while intoxicated (OWI). Madland argues that the law enforcement officer who stopped him failed to comply with the officer's duties under Wisconsin's implied consent statute, WIS. STAT. § 343.305(2). We reject Madland's arguments and affirm.

## BACKGROUND

¶2      The following facts are undisputed. On an early Sunday morning in July 2016, Dunn County Deputy Sheriff Emmer Shields stopped Madland for speeding. After Shields conducted the traffic stop, he arrested Madland for OWI.

¶3      After Madland's arrest and while he was in the squad car, Shields read to him the statutorily prescribed "Informing the Accused" form verbatim.[2] Shields

---

[2] As required by WIS. STAT. § 343.305(4), the informing the accused form that Shields read was stated as follows:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.

> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

2

then asked Madland if he would submit to a chemical blood test. Madland responded that he wanted a test of his own. Shields explained that the sheriff's department only administered a blood test, but Madland could request another test after the blood test. Madland then asked how long his processing at the jail would take. Another officer on the scene responded by explaining to Madland the process for obtaining a search warrant if Madland refused to consent to a blood test.

¶4 Madland then inquired if there was a way to avoid having a "needle stuck in his arm." Shields responded that a blood test was the "only test" the sheriff's department provided. Shields further explained that Madland could request a "different test as … explained on that form, but the test that we do is blood." Eventually, Shields determined that Madland refused to consent to a blood test because he would not give Shields "a yes-or-no answer." Shields then transported Madland to a hospital and began the process for obtaining a search warrant.

¶5 At the hospital, Shields again read to Madland the informing the accused form. This time, Madland consented to a blood test. After the blood test, Shields asked Madland if he wanted to take another chemical test. Madland replied,

---

If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified.

In addition, your operating privileges will also be suspended if a detectable amount of a restricted controlled substance is in your blood.

Will you submit to an evidentiary chemical test of your BLOOD?

"What's the point?" No additional chemical testing occurred. Madland's blood sample indicated an alcohol concentration of 0.176 grams per 100 milliliters of blood. The State charged Madland with OWI and PAC, both as a third offense.

¶6 Madland moved to suppress evidence of his blood test result. As relevant to this appeal, Madland argued that: (1) Shields denied Madland his right to an alternative chemical test under WIS. STAT. § 343.305(5)(a); and (2) Shields misinformed him of his rights under the implied consent law.

¶7 At the suppression hearing, Madland testified only with regard to whether Shields misinformed him of his rights under the implied consent law. Madland stated he told Shields that he wanted to have his "own test," meaning that Madland "wanted to have a test [of] anything other than having blood taken from" him. He did not explain this reason for wanting his "own test" to Shields. Madland testified that he eventually concluded that Shields "got to choose what the first test was." Nonetheless, Madland asserted that he still wanted "an alternative test other than blood" because he "wanted to confirm or disconfirm the numbers that were going to be used against" him. Madland recalled being told that a blood test "was the only test" that the sheriff's department offered. He explained that the reason he did not ask for another test after his blood was drawn was because he thought he did not "have an option," as he "was told the blood test is the only test that they do."

¶8 After cross-examination by the State, the circuit court examined Madland. In responding to the court's questions, Madland could not remember much of the events that occurred after his arrest and during his conversations with the officer such as: if he asked Shields to read him the informing the accused form at the hospital; whether he replied yes or no to Shields's initial request for a blood test at the site of the traffic stop; and whether he agreed to a blood test during the

4

time between when Shields first read to him the informing the accused form at the site of the traffic stop to the time after Shields read the form to him a second time at the hospital. Madland could clearly remember, however, the reasons why he asked to submit to his "own" test rather than a blood test. The court then asked Madland, "[W]as there any conversation after [the blood test occurred] that you recall regarding an additional test or a different test?" Madland replied, "I wanted one but I didn't think it was an option." Madland further testified that he told Shields "I want one but what's the point?"

¶9      The circuit court denied Madland's motion to suppress. The court found that "the facts as testified to by Deputy Shields are the facts of the case." It noted that Shields's and Madland's respective testimony only differed on what Madland told Shields after Madland's blood was drawn. The court resolved the conflicting testimony as follows:

> Given all of the circumstances and observing the witnesses, and given Mr. Madland's lack of recollection on some other things, and what [Shields] testified to resolved that conflict of facts, I find that when Mr. Madland had mentioned about the other test, well, what's the point … I don't believe that Mr. Madland said, I want one but what's the point? I believe he said, what's the point? Nowhere in the context of this is it credible that he said he wanted to compare the numbers.
>
> ….
>
> Madland didn't say anything earlier about, well, I want an alternative test so I can compare the results. I think this is just what he says after the fact. But when he's asked about an alternative test after he's provided the blood test, he said, what's the point? And the only reasonable interpretation of that is, well, what's the point? He didn't want to get stuck with a needle and he didn't want to take the blood test. So now that he's taken the blood test, what would be the point; right? And so that's the only way that the Court can interpret that.

¶10 Additionally, the circuit court found, as a factual matter, that Madland did not request an alternative chemical test. Rather, Madland had been requesting a different primary chemical test.[3]

¶11 In regard to Madland's second argument, the circuit court determined that Shields did not mislead Madland about his rights under the implied consent law. It noted that the additional information Shields provided to Madland outside of what Shields read to him from the informing the accused form was "a little problematic" and that Shields "could have stated it a little bit differently." Nonetheless, the court concluded Shields accurately advised Madland of his rights when it assessed the totality of the circumstances surrounding the traffic stop and the blood draw at the hospital:

> I think if [Shields] would have been a little bit more careful and said this is our primary test – I know he said it at one point or another. But if you look at it in context … the way the Court interprets it, he's telling [Madland], look, the only test we give for primary tests is a blood test. You have to take the blood test before you can get another test. [Shields] didn't explain it exactly that way, but if you look at the information of the Informing the Accused that was conveyed and the request of the blood test and so forth, that is the only reasonable interpretation.

¶12 Madland subsequently pleaded no contest to third-offense PAC, and the circuit court entered a judgment of conviction on that count. Madland's OWI charge was dismissed on the State's motion. Madland now appeals, challenging the denial of his suppression motion.

---

[3] As explained below, *see infra* ¶14, a law enforcement officer may request an individual arrested on suspicion of OWI to submit to one of the three statutorily approved chemical tests—breath, blood, or urine. *See* WIS. STAT. § 343.305(3). The law enforcement officer's agency is permitted to designate which of those three tests shall be administered first, and this first test is sometimes referred to as the "primary test." *See State v. Schmidt*, 2004 WI App 235, ¶8, 277 Wis. 2d 561, 691 N.W.2d 379.

## DISCUSSION

¶13    Madland asserts that he is entitled to suppression of his blood test result, renewing the two arguments that he raised before the circuit court. Madland first argues that he properly requested an alternative chemical test under Wisconsin's implied consent statute, WIS. STAT. § 343.305(2). Second, Madland contends that Shields deviated from the standard informing the accused form, confusing Madland and misleading him regarding his right to request an alternative test. We reject both arguments.

*I.  Request for an alternative test*

¶14    WISCONSIN STAT. § 343.305(2) provides that a person operating a motor vehicle on the public highways is deemed to have given consent to one or more tests of his or her breath, blood, or urine for the purpose of determining the presence of alcohol or controlled substances when requested by a law enforcement officer and consistent with certain statutory prerequisites. If a person is arrested on suspicion of OWI, law enforcement officers may request that the person submit to one of the three statutorily approved chemical tests—breath, blood, or urine. Sec. 343.305(3). The law enforcement officer's agency "may designate which of the tests shall be administered first." Sec. 343.305(2). This first test is sometimes referred to as the "primary test." ***State v. Schmidt***, 2004 WI App 235, ¶8, 277 Wis. 2d 561, 691 N.W.2d 379.

¶15    The law enforcement officer's agency must, however, be prepared to administer at least two of the three approved chemical tests. WIS. STAT. § 343.305(2). This is so, in part, because a person can request an additional test. *See* § 343.305(5)(a). Although § 343.305(4) and (5) use the term "alternative test," § 343.305 makes clear that a person "does not have a right to choose a test *instead*

*of* the one the officer asks him or her to take; rather, the 'alternative test' is *in addition to* that test." *Schmidt*, 277 Wis. 2d 561, ¶11 (emphasis in original). For consistency with prior case law, we refer to the "alternative test" as an "additional test." *See id.*

¶16    If a person submits to the primary test, he or she must be permitted upon request to take an additional test provided by the agency or must be allowed a reasonable opportunity to obtain a test of his or her choice, at his or her expense. WIS. STAT. § 343.305(5)(a). The purpose of the additional test is to afford the accused an opportunity to verify or challenge the result of the primary test. *Schmidt*, 277 Wis. 2d 561, ¶12. Law enforcement officers are required to inform persons subject to the requested chemical testing of their options by reading to them the informing the accused form, which is prescribed by statute. *See* WIS. STAT. § 343.305(4).

¶17    The request for an additional chemical test may be made before or after the primary test is administered. *Schmidt*, 277 Wis. 2d 561, ¶31. A person cannot request, however, that a test be used other than the one a law enforcement officer has designated as the primary test in that person's case. *See id.*, ¶11. Furthermore, a request for a different primary test is insufficient to establish a request for an additional test. *See id.*

¶18    Whether Madland requested an additional test requires us to construe and apply WIS. STAT. § 343.305(5)(a) to the facts of this case. We accept the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). We also accept the credibility determinations made by the circuit court sitting as the trier of fact. *Schmidt*, 277 Wis. 2d 561, ¶13. However, the application of

8

§ 343.305(5)(a) to the facts as found by the circuit court presents a question of law that we review de novo. *Schmidt*, 277 Wis. 2d 561, ¶13.

¶19    Madland's first argument lacks merit because it runs contrary to the circuit court's findings of fact. Madland states that he "made an express request for alternative testing," but that assertion is inconsistent with the facts the court actually found. Rather, the court reasonably found that prior to the blood test, Madland had been requesting a different type of test be used as the primary test because he did not want to be stuck with a needle. The court further found that Madland did not request an additional test after his blood had been drawn. When Shields asked Madland if he wanted an additional test, Madland merely stated "What's the point?" The court found that the only reasonable interpretation of his statement was that it was a reference to Madland's prior comment of not wanting to be stuck with a needle. Thus, Madland never requested an additional test. The court's factual findings are supported by the record, and they are therefore not clearly erroneous.

¶20    Madland appears to assert that whether he requested an additional test is a question of law subject to de novo review. That notion is incorrect—whether a person requests an additional test as opposed to a different primary test is a question of fact that the trier of fact resolves. *See id.*, ¶¶14, 31; *see also* **State v. Tollaksen**, No. 2012AP778, unpublished slip op. ¶¶9, 13-14 (WI App Jan. 10, 2013). Here, the circuit court properly found that Madland did not request an additional test.

*II. Misleading statements*

¶21    Madland alternatively argues that any failure on his part to request an additional test was due to Shields's misleading statements when he deviated from

the standard informing the accused form.[4] Similar to Madland's first argument, the issue of whether Shields improperly informed Madland of his rights under WIS. STAT. § 343.305 requires us to apply and interpret that statute to the facts as found by the circuit court. That presents a question of law that we determine independent of the circuit court's decision. *See Washburn Cty. v. Smith*, 2008 WI 23, ¶55, 308 Wis. 2d 65, 746 N.W.2d 243.

¶22 Madland argues that Shields provided incorrect information in addition to that provided pursuant to Shields's statutorily prescribed duty under WIS. STAT. § 343.305(4) to read Madland the informing the accused form verbatim. We engage in a three-pronged inquiry to assess the adequacy of the warning process under the implied consent law. *Smith*, 308 Wis. 2d 65, ¶56. All of the following three questions must be affirmatively answered before determining that the information imparted by a law enforcement officer is deemed inadequate:

> (1) Has the law enforcement officer not met, or exceeded his or her duty under §[] 343.305(4) to provide information to the accused driver;
>
> (2) Is the lack or oversupply of information misleading; and
>
> (3) Has the failure to properly inform the driver affected his or her ability to make the choice about chemical testing?

*Id.* (alterations omitted) (quoting *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995)). Here, we conclude that Madland fails the third prong of the *Quelle/Smith* inquiry.

---

[4] In Madland's reply brief, he asserts the State concedes his argument because it does not address his argument in its response brief. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). We decline to deem Madland's argument conceded. Whether a party concedes an argument by a failure to respond to that argument is a decision left to our discretion. *See id.* Because the question is one of law, we exercise our discretion to address the merits of Madland's argument.

¶23    We answer the first prong of the ***Quelle/Smith*** inquiry in the affirmative.  A law enforcement officer exceeds his or her duty under WIS. STAT. § 343.305(4) when he or she goes "beyond the statutory duty of reading the information on the face of the form."  ***Smith***, 308 Wis. 2d 65, ¶57.  Here, on at least two occasions, Shields gave Madland information in addition to that contained in the informing the accused form.  Shields told Madland that he could "request" another test after the blood test, and Shields later told Madland that he could have a different test after the blood test.  Thus, the first prong of ***Quelle/Smith*** is met because Shields provided Madland with information in addition to that contained in the informing the accused form.

¶24    We also answer the second prong of the ***Quelle/Smith*** inquiry in the affirmative.  Within the ***Quelle/Smith*** inquiry, "misleading" is synonymous with "erroneous."  ***State v. Ludwigson***, 212 Wis. 2d 871, 875, 569 N.W.2d 762 (Ct. App. 1997).  As such, a law enforcement officer's inaccurate statement of the law requires an affirmative finding at the second prong.  *See* ***Smith***, 308 Wis. 2d 65, ¶¶57, 81-82.  In at least one instance here, Shields inaccurately stated the law.  Shields told Madland that he could "request" an additional test after he submitted to a blood test, which Shields designated as the primary test.  But, Madland is permitted to request an additional test before or after the primary test is administered.  *See* ***Schmidt***, 277 Wis. 2d 561, ¶31.  Accordingly, we conclude the second prong of ***Quelle/Smith*** is met.

¶25    However, Madland fails in proving the third prong of ***Quelle/Smith***. That prong requires us to rely upon the circuit court's factual findings and credibility determinations.  *See* ***Ludwigson***, 212 Wis. 2d at 876.  On this prong, Madland is required to make a prima facie showing that there was a "causal connection" between Shields's misleading statements and Madland's failure to assert his right to

11

an additional test, which connection the State may then rebut. *See id.* Ultimately, however, whether Shields's misleading statement caused Madland's failure to assert his right to an additional test is a factual matter. *See id.* We must accept a court's factual finding unless it is clearly erroneous. WIS. STAT. § 805.17(2).

¶26 The circuit court found that Madland's failure to request an additional test was not due to any misleading additional information by Shields, and we conclude this finding of fact is not clearly erroneous. The record clearly supports the court's finding. The court expressly found that Shields was a credible witness and Madland an incredible witness. Consequently, it acknowledged that Shields could have better explained that his requests for Madland to take a blood test were a designation of the blood test as the primary test. Nonetheless, the court found that Madland had been requesting a different primary test because he did not want to be stuck with a needle. The court explained that "nowhere" in the context of all the evidence presented to the court did it appear that Madland told Shields he wanted an additional test so that he could compare its result with the blood test's result—which is the purpose behind the implied consent statute's authorization of an additional test. *See Schmidt*, 277 Wis. 2d 561, ¶12. In fact, the court expressly rejected Madland's testimony that he had been requesting an additional test to compare results.

¶27 Madland fails to appreciate that causation under the third prong of *Quelle/Smith* is a factual finding. While Madland crafts his argument based upon other facts found by the circuit court, he does not address the fatal fact found by the court that he had been attempting to designate a different primary test as opposed to requesting an additional chemical test after submitting to a blood test. Madland instead approaches causation as a question of law subject to our independent review of the circuit court. Both *Smith* and *Ludwigson*, however, expressly reject that

12

notion and hold that causation is a factual matter determined by the trier of fact. *See Smith*, 308 Wis. 2d 65, ¶¶70, 85-86; *Ludwigson*, 212 Wis. 2d at 876.

¶28    For the foregoing reasons, Madland has not satisfied the third prong of the *Quelle/Smith* inquiry. We conclude Shields adequately discharged his duty under WIS. STAT. § 343.305(4) to inform Madland of his rights under the implied consent law, notwithstanding Shields's deviation from the informing the accused form. We therefore conclude the circuit court properly denied Madland's motion to suppress evidence of his blood test's result.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.