# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 20, 2025

**Samuel A. Christensen**
**Clerk of Court of Appeals**

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1355-CR**

Cir. Ct. No. 2020CF413

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MASON ALLAN BILBREY,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Mason Allan Bilbrey appeals from a judgment of conviction and an order denying his postconviction motion, which sought withdrawal of his plea based on ineffective assistance of counsel.  Because counsel did not provide ineffective assistance, we affirm.

## Background

¶2     In June 2020, the State charged Bilbrey with one count each of first-degree reckless homicide, delivery of narcotics, second-degree recklessly endangering safety, and felony bail jumping after Bilbrey's nephew died of a drug overdose and a second person nearly died after they both allegedly used drugs they received from Bilbrey.

¶3     After Bilbrey requested that his initially appointed counsel withdraw from the case, successor counsel (hereinafter "counsel") was appointed in November 2020.  Counsel testified at the postconviction hearing that a trial date had been set for May of 2021, but at the time of counsel's appointment, Bilbrey appeared to be "sort of worn out by the process," "was sort of nervous about everything," indicated he "wanted to be able to resolve" the case, and in December 2020, even wrote counsel a letter making this clear.  Counsel believed there was a viable defense to the homicide charge, but when he discussed that defense with Bilbrey, Bilbrey "didn't want to pursue" it.  Counsel testified that this case "didn't ever seem like it was going to go to trial. …  And that was really from Mr. Bilbrey's desire to get this resolved."

¶4     Counsel explained that when he took over the case, the plea offer from the State was for Bilbrey to serve twelve years of initial confinement and, counsel believed, fifteen years of extended supervision, but after counsel's work on the case, including plea negotiations with the State, counsel received an offer for Bilbrey to

2

serve nine years of initial confinement and fifteen years of extended supervision. Bilbrey decided to accept that offer and enter a plea.

¶5 Counsel received from Bilbrey a letter thanking counsel for what he had done for Bilbrey to that point, asking counsel to let Bilbrey know if counsel and the State "have possibly come up with something," informing counsel that Bilbrey had not "received the toxicology for Victim 2," inquiring "what was found" in that victim's system, suggesting specifics as to how the toxicology report could be helpful to his case depending upon what the report indicates, and asking counsel to "check into this [and] bring it up to the [assistant district attorney] if you think it may be a benefit to me [and] my case." Counsel indicated he likely received the letter, which was dated February 20, 2021, "after the February 23 conclusion" of his negotiations with the assistant district attorney. Counsel agreed that after receiving the letter, he could have looked into getting an expert but did not do so because plea negotiations had concluded and "a deal [was] in place that [Bilbrey] wanted." On March 16, 2021, Bilbrey pled no contest to the homicide charge, with the remaining three counts dismissed but read in.

¶6 Bilbrey also testified at the hearing on his postconviction motion, but his testimony differed starkly from that of counsel. Bilbrey stated he was not in a resolution posture when counsel took over the case, but that he "still wanted to fight the homicide charge." He told counsel in person and by phone, "basically every time [they] talked," that he "wanted to go to trial," but counsel "[d]idn't seem very eager to go to trial," "wasn't really trying to listen," and tended to focus their conversations on securing a more favorable deal with the State as opposed to winning at trial. Bilbrey agreed he asked counsel "to talk to the people making statements against me and hire a toxicologist to refute what the State is saying happened." Because counsel did not take his desire to go to trial seriously, Bilbrey

felt "hopeless," "beaten down," and "didn't know how else to end it besides signing a plea and mov[ing] on with my life." He agreed he pled in part "out of the fear" of comments by counsel that the circuit court might sentence him to more prison time even if he was acquitted on the homicide count but found guilty on the other counts at trial than if he pled to the sole count of homicide because the court would look less favorably on the fact Bilbrey would have taken the case to trial instead of pleading. Bilbrey also acknowledged that the fact that his daily existence while confined would be better in prison than in the county jail played a significant role in his decision to plead rather than go to trial.

¶7 On cross-examination, Bilbrey indicated that while he did not express his desire to take the case to trial in either of two letters he sent to counsel, it was a "safe assumption" that he told counsel that he wanted to go to trial and did not want to plead "in every conversation not in writing." When asked if counsel told him he "had no choice but to plead," Bilbrey admitted counsel had only indicated that a plea "was the best option."

¶8 Also testifying on Bilbrey's behalf was a witness who, according to his submitted curriculum vitae, is a "[f]orensic [t]oxicology and [d]rug [i]dentification [c]onsultant." The consultant indicated that the conclusion that the deceased victim's death "was caused by fentanyl was not reliable" because there was a possibility that the concentration of fentanyl observed during the death investigation was artificially elevated due to postmortem redistribution. The consultant admitted, however, that he was not qualified "to render a scientific or medical opinion as to cause of death."

¶9 The circuit court denied the postconviction motion, concluding Bilbrey had shown neither deficient performance by counsel nor prejudice to his

case.  The court found counsel's testimony to be "very credible," including that "he thoroughly discussed [Bilbrey's] options with him" and that Bilbrey "was very clear" he "wanted to resolve this case short of trial."  The court noted that Bilbrey "was worried about getting a longer sentence if he went to trial, which, to be frank, he likely would have" due to not demonstrating good character by pleading instead of "requiring victims or victims' families to go to trial."  The court recognized that counsel's testimony that Bilbrey wanted to plead was further supported by Bilbrey's own testimony, in which he expressed he "wanted to get to prison" because he would have more opportunities for programming and recreation than he had at the county jail.  The court found that counsel "would have prepared the case for trial and hired an expert" if the case had proceeded to trial, but that Bilbrey "clearly told [counsel] that he wanted to enter a plea," so counsel focused on resolving the case in that way.  The court concluded counsel acted responsibly in not "contact[ing] the expert [the] defense now claims he should have because of the clear directive from his client to go to plea."

¶10     The circuit court stated that the expert's opinion that the deceased victim's fentanyl level "might possibly have been elevated due to postmortem redistribution" was "not dispositive testimony," adding "[t]here's no reason to believe that would have changed the result if the case went to trial or if that information was available to the State prior to the plea and was made a part of plea negotiations."  The court further stated it did not believe it would be reasonable to expect "that a defense attorney would necessarily know" of the particular expert Bilbrey was relying upon postconviction.  The court concluded that counsel had done "a sufficient job that was well within the objective standards of reasonableness."  Bilbrey appeals.

*Discussion*

¶11     Referring to his February 20, 2021 letter, Bilbrey contends the circuit court erred in denying his motion for plea withdrawal, insisting counsel performed ineffectively because he "**Made no Effort to Refute the State's Toxicology Report or how it Applied**" to him.  We conclude the court did not err.

¶12     A defendant seeking to withdraw a plea after sentencing must prove by clear and convincing evidence that withdrawal is necessary to correct a manifest injustice.  *State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44.  "One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel."  *Id.*, ¶84.  To establish ineffective assistance of counsel, the defendant must prove both that counsel's conduct was deficient, or outside the wide range of professionally competent assistance, and that counsel's errors were prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove prejudice for purposes of plea withdrawal, the defendant must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled and would have insisted on going to trial.  *Dillard*, 358 Wis. 2d 543, ¶¶95-96.  We need not address both prongs of the *Strickland* test if the defendant fails to make a sufficient showing on either one.[1]  *Strickland*, 466 U.S. at 697.  We uphold a circuit court's factual findings unless clearly erroneous, but decide de novo

---

[1] Bilbrey also asserts counsel performed deficiently "**[b]ecause he [f]ailed to [i]nvestigate the State's [c]orroborating [w]itnesses**."  Bilbrey, however, fails to develop any argument to show a reasonable probability he would not have pled guilty but instead would have insisted on going to trial if counsel had investigated the two witnesses he references; thus, he cannot show the asserted failure prejudiced him.  Because Bilbrey must demonstrate both deficient performance and prejudice to establish that counsel provided him with ineffective assistance, we need not consider this issue further.

the legal question of whether counsel was constitutionally ineffective. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

¶13 Bilbrey is not entitled to plea withdrawal because he has not shown that counsel performed deficiently in failing to retain an expert or that there was a reasonable probability that had counsel retained the expert Bilbrey now claims he should have retained, Bilbrey would not have pled but instead would have insisted on going to trial.

¶14 The circuit court found that counsel testified "very credibly" that he "thoroughly discussed [Bilbrey]'s options with him" and that "if [Bilbrey] had wanted to go to trial, [counsel] would have prepared the case for trial and hired an expert as he had done in multiple other similar cases." The court found that counsel's testimony was supported by Bilbrey's letters to counsel, in which, for example, Bilbrey expressed his gratitude for counsel's representation and further expressed that he is not a "gambling man" and that he "he [did not] like the odds of getting more time then [sic] the plea." Further, and notably, Bilbrey did not testify that he would have gone to trial if counsel had hired a toxicologist, as he now claims counsel should have done, and he did not explain how the postconviction toxicology report changed his mind about entering a plea.

¶15 Relatedly, the circuit court also found that counsel's "failure to consult with the expert identified by subsequent counsel would [not] have led to any sort of different result." It found that the expert testimony that postmortem redistribution could possibly have artificially raised the fentanyl concentration observed during the death investigation was "not dispositive testimony," adding that "[t]here's no reason to believe [it] would have changed the result if the case went to trial" or even affected the outcome of plea negotiations.

¶16    We agree. The record in this case supports the circuit court's findings and its conclusion that Bilbrey had not shown that counsel performed ineffectively.

¶17    The factfinder, here the circuit court, is the "ultimate arbiter" of witness credibility. *See Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 676, 273 N.W.2d 279 (1979); *State v. Schmidt*, 2004 WI App 235, ¶13, 277 Wis. 2d 561, 691 N.W.2d 379. Bilbrey fails to develop an argument to convince us that the court clearly erred in finding counsel's testimony credible (and consequentially Bilbrey's not credible); therefore, the court's credibility determination stands. While Bilbrey conclusorily asserts on appeal that counsel's testimony that Bilbrey wanted to plead was "wrong," he fails to develop an argument to convince us that the court clearly erred in its factual finding that Bilbrey desired to plead rather than take the matter to trial. *See Wal-Mart Real Est. Bus. Tr. v. City of Merrill*, 2023 WI App 14, ¶32, 406 Wis. 2d 663, 987 N.W.2d 764 ("We need not consider arguments that are undeveloped."). With that, we agree with the circuit court's determination that in light of Bilbrey's clearly expressed desire to plead and resolve this case sooner rather than later, counsel did not perform deficiently by focusing his efforts on securing the best possible plea offer, rather than ramping up for trial by seeking out experts.

¶18    Further, we agree with the circuit court's conclusion that the expert's testimony that postmortem redistribution could "possibly" have artificially inflated the fentanyl levels detected in the deceased victim fails to move the needle, as it is speculative as to whether postmortem redistribution occurred in this case. Bilbrey's consultant provided nothing more than speculation that the toxicology results related to the deceased victim were artificially inflated, and "[a] showing of prejudice requires more than speculation." *See State v. Wirts*, 176 Wis. 2d 174, 187, 500 N.W.2d 317 (Ct. App. 1993).

¶19 Because Bilbrey failed to show ineffective assistance and thus failed to show a manifest injustice by clear and convincing evidence, we affirm the judgment of conviction and the order denying Bilbrey's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.